**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN DUTKIEWICZ, on behalf of himself and classes, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| TRANSWORLD SYSTEMS INC., as successor to NCO FINANCIAL SYSTEMS INC., NCO FINANCIAL SYSTEMS INC., AMERICAN CORADIUS INTERNATIONAL LLC, and WELTMAN WEINBERG & REIS CO. LPA, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Brian Dutkiewicz seeks redress from unlawful practices engaged in by Transworld Systems Inc. as successor to NCO Financial Systems Inc. ("Transworld"), NCO Financial Systems Inc. ("NCO"), American Coradius International LLC ("ACI"), and Weltman Weinberg & Reis Co. LPA ("WWR"), contrary to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction exists under 15 U.S.C. §1692k, and 28 U.S.C. §§1331 and 1337.

3. Because defendants' collection activities occurred in this District, and because they do business here, personal jurisdiction and venue in this District is proper.

### PARTIES

4. Brian Dutkiewicz lives in Chicago, Illinois.

5. Transworld – a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Pennsylvania 19044, whose registered agent is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604 – is a collection agency that does business in Illinois. It seeks to collect on defaulted consumer debts that were originally

1

owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

6. NCO – a Pennsylvania corporation with offices at 507 Prudential Road, Horsham, Pennsylvania 19044, whose registered agent is CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604 – is a collection agency that does business in Illinois, and is licensed as such by the State of Illinois. It seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

7. Transworld is the successor to NCO.

8. Transworld manages "Agency and Attorney Networks," which are described on its website (http://www.tsico.com/Services/Agency_Attorney_Network.html) as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading-edge technology and the expertise needed to achieve results.
>
> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. TSI is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. TSI has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

9. Transworld's Agency and Attorney Networks are continuations of virtually identical networks set up by NCO. For example, the Form 10-K annual report filed by NCO's parent company for 2010 said that NCO employees "coordinate and implement legal collection solutions undertaken on behalf of our clients through the management of nationwide legal resources specializing in collection litigation. Our collection support staff manages the attorney relationships and facilitates the transfer of necessary documentation."

10. ACI – a Delaware limited liability company located at 2420 Sweet Home Road, Suite 150, Amherst, New York 14228, whose registered agent is Illinois Corporation Service

Co., 801 Adlai Stevenson Drive, Springfield, IL 62703 – is a collection agency that does business in Illinois, and is licensed as such by the State of Illinois. It seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

11. WWR – a law firm organized as a corporation under Ohio law, with offices at 180 North LaSalle Street, Chicago, Illinois 60601 – is a collection law firm, and a collection agency. It seeks to collect on defaulted consumer debts that were originally owed to others, using the mail, telephone and electronic wire services to do so, all in the general course of trade and commerce.

12. Each defendant is a "debt collector," as defined in 15 U.S.C. §1692a.

**FACTS**

13. Defendants have been seeking to collect from plaintiff two alleged student loan debts, incurred for personal, family or household purposes.

14. ACI sent letters to Dutkiewicz in an attempt to collect on these student loans on June 6, 2014 (Exhibits A & B), August 4, 2014 (Exhibits C & D), September 17, 2014 (Exhibits E & F) and November 4, 2014 (Exhibits G & H). Exhibits A & B were, on information and belief, the first letters sent to Dutkiewicz by ACI on the two student loans.

15. The letters were printed on two-sided pieces of paper, folded over to form an envelope. Exhibits I & J are examples of these folded mailers.

16. The folded mailers used by ACI included a seven-digit "reference number" assigned to Dutkiewicz's account, which is shown on the letters sent to him. (Compare Exhibits G & I, and Exhibits H & J.)

17. WWR thereafter sent letters to Dutkiewicz on January 17, 2015 (Exhibit K) and February 4, 2015 (Exhibits L & M) to collect on the same debts. On information and belief, Exhibits K, L & M were the first letters sent by WWR to Dutkiewicz on these accounts.

18. Each of the letters sent by ACI and WWR, identified above, were sent at the direction of NCO or its successor, Transworld, through its "Agency and Attorney Networks," or

a similar network under a different name.

19. Each of the letters sent by ACI and WWR, identified above, state that "National Collegiate Trust" is the creditor on the accounts that Dutkiewicz allegedly owed.

20. After the mailing of <u>Exhibits K, L & M</u>, WWR filed suit against Dutkiewicz, at the direction of Transworld (as successor to NCO), in the Circuit Court of Cook County. The suits were filed in the name of "National Collegiate Trust 2006 - 4." (<u>Exhibits N & O</u>.)

21. A search of the Delaware Secretary of State website reveals that there are over 75 "National Collegiate" trusts, including National Collegiate Student Loan Trust 2006-4. (<u>Exhibit P</u>.) Defendants claim that these are different legal entities. One of the entities is named The National Collegiate Trust, but it is not the one which was alleged to hold plaintiff's loans in the lawsuits filed against plaintiff.

22. Different trusts appear to have different trustees. (See <u>Exhibits Q & R</u>.)

23. In lawsuits brought to enforce the "National Collegiate" loans, questions have been raised concerned what entities hold title to the loans.

24. Transworld and its predecessor, NCO (hereafter, "Transworld / NCO") have engaged in deceptive and unfair conduct, or permitted such conduct to be used by other agencies working on its behalf (like ACI or WWR) in connection with the collection of debts, as shown by the following:

    (A) One of the NCO employees that signed affidavits for National Collegiate cases, Chandra Alphabet, signed an agreement with the Georgia Bar to cease and desist from engaging in the unauthorized practice of law in March 2013.

    (B) On July 9, 2013, NCO and related entities entered into a consent judgment in *United States v. Expert Global Solutions, Inc., formerly known as NCO Group, Inc., NCO Financial Systems, Inc., ALW Sourcing, LLC, Transworld Systems Inc.*, 3:13CV2611 (N.D.Tex.), agreeing to injunctive relief and to pay $3.2 million in penalties for improper debt collection

practices involving harassment and abuse.

(C) In February 2012, the Attorneys General of 19 states (Alaska, Arkansas, Idaho, Illinois, Iowa, Kentucky, Louisiana, Michigan, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, Vermont, and Wisconsin) entered into a settlement with NCO to resolve allegations of deceptive and unfair debt collection practices, under which NCO agreed to pay $575,000 to the 19 states for consumer protection enforcement efforts and an additional $50,000 for each participating state to refund consumers with valid claims.

(D) Between 2010 and 2012, NCO signed a series of consent orders with the Minnesota Department of Commerce, involving such conduct as hiring unfit persons.

(E) In November 2010, NCO signed a consent order with the Arizona Department of Financial Institutions involving, among other things, unauthorized practice of law.

(F) In January 2006, NCO entered into a settlement with the Pennsylvania Attorney General to resolve numerous claims of using false, deceptive, or misleading representations or means and harassment in connection with the collection of debts.

(G) In 2004, NCO Group Inc. settled Federal Trade Commission charges that it reported inaccurate information about debtors accounts to credit reporting agencies and paid $1.5 million in civil penalties

25. On information and belief, based on affidavits and evidence in *Williams v. NCO Group Inc.*, No. 5:10CV761 (C.D.Cal.), *NCO Financial Systems Inc. v. Daniels Law Offices PC*, No. 1:11CV11035 (D.Mass) and other cases, NCO selects counsel, communicates with counsel, and instructs counsel. The nominal plaintiff in each case (in this case, "National Collegiate Trust 2006 - 4") does not select, communicate with or instruct counsel.

26. As a matter of its standard operating procedure ("SOP"), Transworld / NCO directs network law firms to not communicate with the nominal plaintiffs:

> NCO will interact directly with the Client. In some instances, attorneys may interact directly with the Client only after a request is made through NCO and the Client approves. Only in urgent situations, the firm, and a Client may make contact providing that NCO has also been informed of the situation. If a Client initiates contact with an Attorney Firm directly, the firm is responsible, for the purposes of inventory control and tracking, to notify NCO of the communication.
>
> ln essence, the Attorney Firm's first point of contact is NCO. All statements, notices, information, etc. will go through NCO. (Attorney Firm SOP v.2.1)

27. Another portion of the Transworld / NCO SOP states that "all communications regarding accounts will be conducted between the Attorney Firm and NCO only." On information and belief, subsequent versions of the SOP were consistent.

28. Law firms hired by Transworld / NCO are expressly informed that they are "required to follow NCO's Network Attorney Standard Operating Procedures."

29. Both Transworld / NCO, and firms in its network, are paid on commission.

30. Transworld / NCO grades network firms in Attorney Report Cards based on "key performance indices" geared to the speed with which judgments are obtained and collected. The indices include such metrics as "Payer Rates," "Suit Rate," "Service Rates," "Judgment Rates" and "Spin" or "Liquidation Rates."

31. On information and belief, a similar SOP exists for agencies who are not law firms, like ACI, and provide similar instructions, with respect to which all collection agencies working for Transworld / NCO must comply.

### COUNT ONE (FALSE DISCLOSURE OF CREDITOR'S IDENTITY)

32. 15 U.S.C. §1692e generally provides, for any collection attempt, that

> **a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **(2)** The false representation of –
>
>     **(A)** the character, amount, or legal status of any debt... [or]
>
> **(10)** The use of any false representation or deceptive means to collect or

6

> **attempt to collect any debt or to obtain information concerning a consumer.**

33. 15 U.S.C. §1692g(a) establishes specific rules for initial communications by a debt collector to a consumer:

> **Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –**
>
> **(1)** **the amount of the debt;**
>
> **(2)** **the name of the creditor to whom the debt is owed;**
>
> **(3)** **a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
>
> **(4)** **a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
>
> **(5)** **a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

34. For reasons alleged in this complaint, defendants violated 15 U.S.C. §§1692e and 1692g by "disclosing" that the creditor was "National Collegiate Trust," when that was not accurate, and when there were dozens of similarly named entities.

35. This violation did not only occur with respect to plaintiff, but with respect to all other consumers who received a mailer identifying "National Collegiate Trust" as the creditor when that was not actually true. There are at least hundreds of people in this situation, given the fact that debt portfolios are usually purchased in bulk, and collected through the use of bulk form mailers like those sent to plaintiff.

## CLASS ALLEGATIONS

36. Under Fed.R.Civ.P. 23(b)(3), plaintiff seeks relief for two classes, both of which have a subclass.

37. Class A includes all individuals in Illinois who were sent a letter by ACI which disclosed that the "current creditor" was "National Collegiate Trust," when the current creditor was not The National Collegiate Trust, and whose letter were sent at any time between the period beginning one year prior to the filing of this action and ending 20 days after the filing of this action. Subclass A-1 includes all Class A members who received such a disclosure in the first communication they received from ACI.

38. Class B includes all individuals in Illinois who were sent a letter by WWR which disclosed that the "current creditor" was "National Collegiate Trust," when the current creditor was not The National Collegiate Trust, and whose letter were sent at any time between the period beginning one year prior to the filing of this action and ending 20 days after the filing of this action. Subclass B-1 includes all Class B members who received such a disclosure in the first communication they received from WWR.

39. On information and belief, based on the use of a form letters, the classes and subclasses are so numerous that joinder of all members is not practicable.

40. There are questions of law and fact common to the members of both classes, which predominate over any questions relating to individual class members. The predominant common question is whether the collection letters discussed herein comply with the FDCPA.

41. Plaintiff's claim is typical of the claims of the members of the classes, as it is based on the same facts and legal theories.

42. Plaintiff will fairly and adequately represent the classes, and has retained counsel experienced in class actions and FDCPA litigation.

43. A class action is superior for the fair and efficient adjudication of this matter, in that (A) individual actions are not economically feasible, (B) members of the class are likely to be unaware of their rights, and (C) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, judgment in favor of plaintiff and the classes should be given, awarding

    (A)    statutory damages,

  (B)  attorney's fees, litigation expenses and costs of suit, and

  (C)  all other proper relief.

## COUNT TWO (DISPLAY OF ACCOUNT INFORMATION)

44. The letters sent by ACI displayed the account or reference number of plaintiff, contrary to 15 U.S.C. §§1692f and 1692f(8):

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....**
>
> **(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.**

45. For reasons alleged in this complaint, Transworld / NCO, and ACI, violated the FDCPA. *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014).

46. This violation did not only occur with respect to plaintiff, but with respect to all other consumers who received a mailer from ACI in the form found in Exhibits I & J. There are at least hundreds of people in this situation, given ACI's use of form mailers, and use of bar coding that permits ACI to apply for and use bulk mailing postage rates.

## CLASS ALLEGATIONS

47. Under Fed.R.Civ.P. 23(b)(3), plaintiff seeks relief for a class ("Class C") that includes all individuals in Illinois who were sent a letter by ACI which showed a consumer's account or reference number on the outside , and whose letters were sent at any time between the period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

48. On information and belief, based on the use of a form letters, the class is so numerous that joinder of all members is not practicable.

49. There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common question is whether the collection letters discussed herein comply with the FDCPA.

50. Plaintiff's claim is typical of the claims of the class members, as it is based on the same facts and legal theories.

51. Plaintiff will fairly and adequately represent the class members, and has retained counsel experienced in class actions and FDCPA litigation.

52. A class action is superior for the fair and efficient adjudication of this matter, in that (A) individual actions are not economically feasible, (B) members of the class are likely to be unaware of their rights, and (C) Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, judgment in favor of plaintiff and the classes should be given, awarding

    (A)    statutory damages,

    (B)    attorney's fees, litigation expenses and costs of suit, and

    (C)    all other proper relief.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\31352\Pleading\revised complaint.wpd

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ Daniel A. Edelman
Daniel A. Edelman

10

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with any plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

s/Daniel A. Edelman
Daniel A. Edelman